UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISA HUDSON,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>    Defendant. | No. 2:18-cv-02812 AC<br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, petitioner's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on April 7, 2015. Administrative Record ("AR") 201.[2] The disability onset date was alleged to be March 22, 2014. Id. The application was disapproved

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).
[2] The AR is electronically filed at ECF Nos. 11-3 to 11-14 (AR 1 to AR 885).

1

initially and on reconsideration. AR 138-42, 114-49. On March 9, 2017, ALJ Mary French presided over the hearing on plaintiff's challenge to the disapprovals. AR 31-60 (transcript). Plaintiff, who appeared with her counsel Jesse Kaplan, was present at the hearing. AR 32. Mr. Grant, a Vocational Expert ("VE"), and Douglas McCullough, a lay witness, also testified at the hearing. Id.

On August 18, 2017, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 15-25 (decision), 26-29 (exhibit list). On August 29, 2018, after receiving a "Request for review from Jesse S. Kaplan, dated October 20, 2017" and a "Letter from the claimant's representative dated October 17, 2017" as additional exhibits, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision and additional exhibit list).

Plaintiff filed this action on October 18, 2018. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 8, 21. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 14 (plaintiff's summary judgment motion), 19 (Commissioner's summary judgment motion), 20 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1986, and accordingly was, at age 29, a younger person under the regulations, on the date last insured.[3] AR 24. Plaintiff has a limited education and can communicate in English. Id. Plaintiff had previously filed a separate claim for DIB, and an Administrative Law Judge denied the claim on May 6, 2013, following a hearing. AR 15. The Appeals Council denied a request for review of that decision, making it final. Id.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the

---
[3] See 20 C.F.R. § 404.1563(c) ("younger person").

2

Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Commissioner, 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

3

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. [Step 1] The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 22, 2014 through her date last insured of December 31, 2015 (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] Through the date last insured, the claimant had the following severe impairments: an anxiety disorder, a personality disorder, post-traumatic stress disorder (PTSD), borderline personality traits, a major depressive disorder, and alcohol abuse (20 CFR 404.1520(c)).
>
> 4. [Step 3] Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant was able to understand, remember and carry out simple tasks and instructions; she was unable to work with the general public; she could work in the presence of co-workers, but would not be able to work closely with them as a member of a team; and she would need to be in a workplace with few changes.
>
> 6. [Step 4] Through the date last insured the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. [Step 5] The claimant was born [in 1986] and was 29 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).
>
> 8. [Step 5, continued] The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82041 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 22, 2014, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(g)).

AR 18-25

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 25.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to re-open the prior DIB decision; (2) improperly rejecting the testimony of Dr. Richard Lieberman; (3) failing to mention Dr. Janak Mehtani; (4) improperly relying only on non-examining physicians to define the RFC; and (5) improperly rejecting the lay testimony of plaintiff and her boyfriend. ECF No. 14.

### A. The Decision Not to Re-Open the Prior Disability Case Is Not Reviewable

An ALJ's denial of a motion to re-open is a discretionary decision that is not subject to judicial review. Klemm v. Astrue, 543 F.3d 1139, 1144 (9th Cir. 2008). Plaintiff attempts to distinguish Klemm, arguing that it involved an untimely request to re-open while plaintiff's request was timely and presented to the court following the exhaustion of the administrative process. ECF No. 20 at 7-9. The undersigned agrees with the Commissioner that Klemm is controlling.

Plaintiff's timeliness argument is a red herring. The Ninth Circuit in Klemm did not consider timeliness in deciding whether the ALJ's refusal to re-open was a "final"—and therefore reviewable—decision. See Klemm, 543 F.3d at 1144. Rather, the court relied on a categorical, bright line rule that is based on well-established Circuit and Supreme Court precedent:

> The Social Security Act grants to district courts jurisdiction to review only "final decisions" of the Commissioner. 42 U.S.C. § 405(g). Because a denial of a motion to reopen is a discretionary decision, it is not final and, thus, is not generally reviewable by a district court. Udd v. Massanari, 245 F.3d 1096, 1098-99 (9th Cir. 2001) (citing Califano v. Sanders, 430 U.S. 99, 107-09, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977)).

Id.

The only exception is where there is a "colorable constitutional claim of due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination." Id. (quoting Evans v. Chater, 110 F.3d 1480, 1483 (9th Cir.1997)). Here, plaintiff did not present a constitutional claim. See ECF No. 14 at 7-13. She does attempt to raise a due process issue in her reply briefing, ECF No. 20 at 8, but this new basis for relief cannot be raised for the first time on reply. Even if the court could consider the matter, however, plaintiff does not to explain how her constitutional rights were violated; she merely argues that the ALJ's factual errors related to the re-opening decision rose to the level of a due process violation. Id. Recasting plaintiff's reversible error argument in due process terms is insufficient to invoke the constitutional claim exception. In Klemm, the plaintiff argued that he had a colorable due process claim because his mental impairments prevented him from understanding how to contest the denial of benefits. Klemm 543 F.3d at 1145. The Ninth Circuit found that Klemm had not presented any evidence of mental impairment, decided that he had no colorable constitutional claim, and accordingly held that the district court lacked jurisdiction to consider the matter. Id. Because plaintiff here has not presented evidence that she was denied an opportunity to be heard regarding re-opening or to seek reconsideration, see Klemm, 543 F.3d at 1144, she does not qualify for the constitutional claim exception.

Plaintiff also argues that the decision not to re-open was based on reasons "so clearly counterfactual as to constitute an abuse of discretion." ECF No. 20 at 8. The discretionary nature of the ALJ's decision regarding re-opening renders it *judicially unreviewable*, Klemm, 543 F.3d at 1144, not subject to judicial review under an abuse of discretion standard. The Supreme Court has held in no uncertain terms that the federal courts cannot consider claims that ALJs abuse their direction in declining to re-open. Califano v. Sanders, 430 U.S. 99, 107-108 (1977) (". . . §

205(g) cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits.").

This court lacks jurisdiction to review the ALJ's decision not to reopen plaintiff's prior claim, and plaintiff's arguments on this issue will not be considered.

    B. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

        1. The Medical Opinion Evidence

The record before the ALJ included the medical opinions of treating psychiatric provider Dr. Janak Mehtani, consultative examiner Dr. Jonathan Schwartz, psychiatric consultative examiner Dr. Richard S. Lieberman, psychiatric consultative examiner Dr. T. Renfro, and State agency medical consultants Dr. D. Pong and Dr. H. Pham.

On November 6, 2009, plaintiff was the victim of an armed robbery during her employment as a store manager at Circle K. AR 374. She began experiencing psychiatric symptoms and filed a Workers Compensation claim. Id. Plaintiff began seeing Dr. Mehtani beginning June 1, 2012 as part of her claim. AR 345. Dr. Mehtani wrote letters to plaintiff's insurer over the course of her treatment, describing symptoms and medication. AR 350 (10/24/13), 356 (02/07/13), 358 (01/09/13), 360 (11/20/12), 362 (10/24/12), 366 (08/22/12), 370 (07/12/12), 372 (07/03/12), 382 (12/04/13),388 (04/16/13). In some of the letters from 2012, Dr. Mehtani described plaintiff as "totally disabled form any gainful employment" but did not assign any specific functional limitations. AR 362, 370, 372, 382. The most recent letter was written on December 4, 2013, indicating that plaintiff was being seen for psychiatric medication management, noting that plaintiff was diagnosed with PTSD as a result of being the victim of an armed robbery, and that she had an underlying history of mood disorder and possibly bipolar disorder. AR 345. This letter did not assign any functional limitations or describe plaintiff as disabled from gainful employment. Id. Dr. Mehtani noted in a December 12, 2013 letter to plaintiff's attorney that plaintiff still has some residual symptoms of depression and anxiety but "is functioning a lot better" and experienced "no significant side effects to the medication." AR 379-80. Dr. Mehtani did not assign any functional limitations. Id. In July of 2013, plaintiff reported that she saw Dr. Mehtani for about ten minutes each month. AR 416.

8

Dr. Lieberman first met with plaintiff on December 20, 2011 for a comprehensive psychiatric examination for plaintiff's Workers Compensation case. AR 614. He drafted a report dated January 20, 2012. AR 614. He assessed moderate impairment in plaintiff's ability to maintain pace appropriate to a given workload, ability to preform complex tasks, and ability to relate to others beyond giving and receiving instructions. AR 625-26. He assessed slight to moderate impairment in ability to influence people, make generalizations, evaluations or decisions without immediate supervision, and accept/carry out responsibility for direction, control, and planning. AR 626. Plaintiff had no impairment in comprehending and following instructions or performing simple and repetitive tasks. AR 625. Dr. Lieberman found it premature to determine whether plaintiff could return to her previous work. AR 629.

On July 2, 2013, Dr. Lieberman drafted a letter to plaintiff's counsel following a comprehensive psychiatric examination. AR 413-18. He conducted psychological testing which indicated plaintiff had a significant level of defensiveness, denial, or repression. AR 418. Testing indicated a tendency to overstate or exaggerate complaints of pain and physical discomfort, self-regulatory impairment with heightened avoidant behavior, and anxiety, but no issues with anger and middle levels of self-esteem. Id. On March 11, 2014, Dr. Lieberman wrote a letter opinion as to whether plaintiff qualified for a Subsequent Injuries Fund claim related to her Workers Compensation case. AR 404-05. Dr. Lieberman opined that plaintiff's "preexisting problems certainly predisposed her to have very significant pathological reactivity which has certainly been aggravated by the robbery of 11/6/09." AR 405.

On June 29, 2015, plaintiff underwent a comprehensive internal medicine consultative examination with Dr. Jonathan Schwartz. AR 600-04. Plaintiff reported last working in 2010, stopping for non-medical reasons, and described daily activities including household chores, shopping, and taking care of her personal hygiene. AR 601. The physical examination revealed minimal abnormalities, finding normal ranges of motion, muscle bulk and tone, full 5/5 strength, and intact sensation. AR 602-03. Plaintiff was diagnosed with back pain and knee pain, unable to rule out strain or degenerative changes. AR 603. Dr. Schwarz opined that plaintiff could stand or walk for up to six hours, had no sitting limitations, could lift 50 pounds occasionally and 25

pounds frequently, could engage in frequent stooping and crouching, and had no manipulative limitations. AR 603. State Agency reviewing physicians Dr. Pong and Dr. Pham reviewed plaintiff's allegations of back pain, and found them nonsevere as of July 20, 2015 and November 20, 2015, respectively. AR 110, 128.

On July 2, 2015, Plaintiff underwent a psychiatric consultative examination with Dr. T. Renfro. AR 605-10. Plaintiff was cooperative, able to volunteer information spontaneously, made good eye contact, and exhibited clearly articulated speech, normal thoughts, and anxious and mildly depressed mood. AR 607-08. Dr. Renfro diagnosed PTSD, unspecified depressive disorder, alcohol abuse in sustained full remission per self-report, and nicotine dependence. AR 609. Based on his exam, Dr. Renfro opined that plaintiff was mildly impaired in her ability to perform simple and repetitive tasks, accept instructions from supervisors, or perform work activities on a consistent basis. AR 609-10. Plaintiff would be moderately impaired in her ability to perform complex tasks, interact interpersonally, or deal with workplace stress AR 609-10.

Mental health treatment records in 2016 noted improvement of plaintiff's symptoms with medication management, and documented "a general trend of improvement." AR 867. Various mental status exams continued to indicate anxious and depressed mood, but no significant findings otherwise, and success with medication. AR 867, 869, 872, 874, 877.

2. Principles Governing the ALJ's Consideration of Medical Opinion Evidence

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996).

> Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

////

////

10

Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).

"The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

### 3. The ALJ Did Not Err in Evaluating Dr. Lieberman's Opinion

The ALJ gave "no significant weight" to Dr. Lieberman's findings for two reasons: that opinions as to the ultimate issue of disability are reserved to the Commissioner, and that Dr. Lieberman's conclusions were not consistent with the record as a whole. AR 22. The court finds that, under the circumstances of this case, these were specific and legitimate reasons for discounting the opinion. See Reaganite, 166 F.3d at 1298-99. First, Dr. Lieberman's pre-May 2013 opinions were within the ambit of the prior decision on plaintiff's disability, which was not reopened as discussed above. AR 15-16. Dr. Lieberman's 2014 note stating that plaintiff had prior psychiatric problems (AR 404) is also immaterial, given that those psychiatric conditions would have been within the ambit of the prior decision. Only Dr. Liebman's 2013 and other 2014 notes address plaintiff's condition during the time period assessed by the disability determination at issue here, and those notes include no statements about plaintiff's functional capacity or any concrete functional limitations. AR 404-05, 413-18; see Turner v. Comm'r, 613 F.3d 1217, 1223 (9th Cir. 2010).

Second, Dr. Lieberman's statement that plaintiff qualified for the subsequent injury fund, to the extent that it is relevant at all, is a statement on the ultimate issue of disability which is not binding on the Commissioner. AR 22, 404; see 20 C.F.R. § 404.1527(d)(1) ("a statement by a

medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.")

Third, the ALJ supported her contention that Dr. Lieberman's opinion was inconsistent with the record by pointing to other concrete medical findings. AR 22. The ALJ pointed to medical records from August of 2014 through 2016 which documented that plaintiff was responding well to medication, was benefiting from psychotherapy, and displayed improved symptoms. AR 22, 464-471, 861-885.

For these reasons, the ALJ did not err in her assessment of Dr. Lieberman's opinion.

### 4. The ALJ Did Not Err in Failing to Acknowledge Dr. Mehtani

Plaintiff asserts that the ALJ's failure to consider the notes of Dr. Mehtani was error. ECF No. 14 at 12-13. The undersigned disagrees. Dr. Mehtani's most recent letters in the record (which generally state that plaintiff was stable on medication) are dated June 21, 2013, October 24, 2013, December 4, 2013 and December 12, 2013. AR 379-87. All of Dr. Mahtani's other letters fall within the ambit of the prior decision on disability which, as discussed above, was not reopened. AR 15-16.

The letters that are pertinent to the period at issue here describe no specific functional limitations. Accordingly, they do not constitute medical opinions that are entitled to consideration by the ALJ. See 20 C.F.R. § 416.927 ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); Youngblood v. Berryhill, 734 Fed. Appx. 496, 498 (9th Cir. 2018) (unpublished) ("Dr. Mayers did not opine that [claimant] had any specific limitations concerning her ability to concentrate. An ALJ does not err by not incorporating a physician's opinion when the physician had not 'assign[ed] any specific limitations on the claimant.'") (citing Turner, 613 F.3d at 1223). Further, the letters generally report medication management and do not contain significant or probative evidence; failure to discuss evidence that is not significant or probative is not grounds for reversal. See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

### 5. The ALJ Properly Relied on Opinion Evidence in Formulating the RFC

Plaintiff argues that the ALJ improperly formulated the RFC by relying only on the opinions of non-examiners. ECF No. 14 at 13-16. The court cannot agree. The ALJ expressly gave great weight to the opinion of consultative examiner Dr. Renfro, concluding his opinions were "well-supported by medically acceptable laboratory diagnostic techniques" and "are also consistent with other substantial evidence of record" in the form of State agency physician opinions. AR 23. Dr. Renfro's opinions that plaintiff had moderate limitations—in her ability to perform detailed or complex tasks; interact with coworkers and the public; and deal with stress— were incorporated by the ALJ in her RFC finding. AR 19 (RFC limiting to simple tasks and instructions, no work with general public or working closely with coworkers, workplace with few changes), 605-610.

The ALJ reasonably relied on the opinion of consultative examiner Dr. Renfro, whose uncontradicted opinion constitutes substantial evidence, given the doctor's personal examination findings. Tonapetyanv. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Plaintiff largely argues that it was not logical for the ALJ to give great went to Dr. Renfro while giving little weight to Dr. Lieberman, and that it was not clear what Dr. Renfro meant by "moderate" limitations, but none of this somewhat convoluted argument demonstrates legal error. ECF No. 14 at 13-16. The court finds no error here; the ALJ properly formulated the RFC by weighing the relevant medical evidence.

### C. The ALJ Did Not Err in Discounting Plaintiff's or her Boyfriend's Testimony

The ALJ did not err in discounting plaintiff's testimony regarding her limitations. AR 20-23. While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). "So long as there is no affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of symptoms." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

////

2001). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." Thomas, 278 F.3d at 958.

Here, plaintiff testified that she leaves her apartment to go to school and the store, but she does not like going anywhere because she gets overwhelmed and does not like people standing too close to her. AR 20, 30. She stated that she tries to keep her house clean but there is "always something" preventing her from finishing, such as getting tired or anxious. AR 40. Plaintiff stated that she does not cook but can heat up food, and she does not sleep well. AR 41. She stated she socialized in person only with her children and her boyfriend, and she talks to her sister on the phone. AR 42-43. She stated she was in school to obtain her high school degree, but she was having difficulty focusing. Id., AR 50-51. Plaintiff's boyfriend also testified to her impairments. AR 51-54. His testimony was similar to plaintiff's, stating that plaintiff has abnormal sleep patterns, sleeping more during the day than at night. AR 52. He stated that plaintiff becomes unreasonably angry. AR 52-53. He testified that she does not cook and does not regularly clean the house because she becomes distracted. AR 53.

In this case the ALJ found the testimony of plaintiff and her boyfriend was not consistent with the medical evidence and other evidence in the record, and was contradicted by her activities of daily living. AR 23. In her opinion, the ALJ pointed to medical records from January 2013-2016 noting that plaintiff was doing well with medication, that her thought content was negative for suicidal ideation, she was attentive, alert and oriented, had good judgment, and was doing well with regard to mood, sleep and appetite. AR 23, 422-462 (treatment notes from Dr. Luigi Piciucco); see 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence … is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms ….").

The ALJ's finding that the testimony of plaintiff and her boyfriend was not consistent with recorded activities of daily living is also adequately supported. AR 22-23. For instance, medical reports beginning in 2013 report plaintiff was "getting out of the house much more frequently." AR 428; see also AR 439, 441, 442, 443, 448, 498. Plaintiff reported instances of going to the casino (AR 439, 442, 443, 498), a Super Bowl party (AR 448), a water park (AR

14

427), and dinner at her aunt's house (AR 443). A claimant's daily activities are relevant to an ALJ's credibility determination. See 20 C.F.R. § 404.1529(c)(3), Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2009). Plaintiff's activities of daily living and the contradictory medical evidence are clear and convincing reasons for discounting plaintiff's subjective testimony; the ALJ did not err in discounting that testimony.

Nor did the ALJ err in discounting plaintiff's boyfriend's lay person testimony. An ALJ need only give germane reasons for discrediting lay witness testimony. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). As with a claimant's testimony, an ALJ may discount lay witness testimony if he or she finds it inconsistent with the evidence in the medical record. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). It is the province of the ALJ to make credibility determinations with respect to witnesses. Fair, 885 F.2d at 604. The ALJ discounted plaintiff's boyfriend's testimony on the same grounds on which she discounted plaintiff's testimony; she therefore provided germane reasons for discounting the lay witness testimony. There is no error in this regard.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19), is GRANTED;

3. The Clerk of the Court shall enter judgment for the Commissioner, and close this case.

DATED: March 19, 2020

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

15